IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| WILSONIS AYALA-VILLANUEVA, | ) ) ) | CIVIL NO. 09-00137 JMS/LEK CR. NO. 07-00268-04 JMS |
| Petitioner, | ) ) | ORDER DENYING MOTION TO VACATE, SET ASIDE, OR |
| vs. | ) ) | CORRECT A SENTENCE |
| UNITED STATES OF AMERICA, | ) ) | |
| Respondent. | ) ) | |
| _____ | ) | |

## ORDER DENYING MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE

On April 1, 2009, petitioner Wilsonis Ayala-Villanueva ("Ayala-Villanueva") filed a timely motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence ("§ 2255 Motion").[1]  In his § 2255 Motion, Ayala-Villanueva raises two issues.  First, Ayala-Villanueva alleges that the government failed to disclose evidence favorable to him and failed to comply with Article 36 of the Vienna Convention on Consular Relations ("VCCR").  Second, Ayala-Villanueva argues that his Criminal Justice Act Panel attorney, Cynthia Kagiwada ("Kagiwada"), provided ineffective assistance of counsel.  For the following

---

[1] The government filed a Response to the § 2255 Motion on May 18, 2009, and with leave of court Ayala-Villanueva filed a Reply on October 19, 2009.

reasons, the court DENIES Ayala-Villanueva's § 2255 Motion.[2]

# I. BACKGROUND

## A.   The Offense Conduct

In March 2005, the Drug Enforcement Administration initiated a joint investigation targeting members of a drug trafficking organization headed by Nelson Gaitan-Ayala ("DTO").  Presentence Investigation Report ("PSR") ¶ 7. The DTO "facilitated the transportation and distribution of multi-pound quantities of methamphetamine between Las Vegas, Nevada and the District of Hawaii."  *Id.* Ayala-Villanueva, born in El Salvador, was a member of the DTO.  *Id.* ¶¶ 7, 45.

On March 1, 2005, investigators learned that Ayala-Villanueva and fellow DTO associate Raychel Cabral ("Cabral") were traveling from Honolulu to Molokai in possession of one ounce of methamphetamine.  *Id.* ¶ 8.  On March 2, 2005, investigators stopped Ayala-Villanueva near the Molokai Airport upon observing him commit a traffic violation.  *Id.*  Investigators subsequently determined that Ayala-Villanueva had an outstanding parole violator's warrant in Nevada.  *Id.*  As a result, Ayala-Villanueva was detained and later transferred to State of Nevada authorities.  *Id.*

Meanwhile, investigators learned that Cabral and another DTO

---

[2] Pursuant to Local Rule 7.2(d), this matter can be decided without a hearing.

associate, Roxanne Bates ("Bates"), had stashed a zip-lock bag containing 28.1 grams of methamphetamine in a toilet seat cover dispenser in an airport restroom. *Id.* ¶ 9.  Both Bates and Cabral were detained and subsequently arrested.  *Id.* Following Cabral's arrest, she revealed that Ayala-Villanueva was the source of the methamphetamine that investigators discovered on March 2, 2005 and provided the authorities with Ayala-Villanueva's address.  *Id.* ¶ 10.

On March 4, 2005, investigators executed a search warrant at Ayala-Villanueva's residence.  *Id.* ¶ 11.  Investigators recovered five small bags containing 1,115 grams of d-methamphetamine hydrochloride and $49,100 in cash. *Id.*

## B.    Indictment and Sentencing

On August 23, 2007, Ayala-Villanueva was indicted by a federal grand jury on counts 1, 2, and 3 of a fourteen-count First Superseding Indictment with conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, its salts, isomers, and salts of its isomers ("count 1"), possession with intent to distribute five grams or more of methamphetamine, its salts, isomers, and salts of its isomers ("count 2"), and possession with intent to distribute 50 grams or more (described as approximately 1,115 grams) of methamphetamine, its salts, isomers, and salts of its isomers ("count 3"), all in

3

violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).  First Superseding Indictment

("Indictment") at 2-6.

On February 11, 2008, Ayala-Villanueva pled guilty to count 3 of the

Indictment in return for the dismissal of counts 1 and 2 at the time of sentencing.

Pursuant to his Memorandum of Plea Agreement ("Plea Agreement"), Ayala-

Villanueva expressly waived his right to collaterally attack his sentence except

based on a claim of ineffective assistance of counsel or in the event the court

imposed a sentence greater than specified in the guideline range.  Gov't Opp'n

Ex. A, ¶ 12.

On July 7, 2008, the court sentenced Ayala-Villanueva to 168 months

imprisonment followed by five years of supervised release.  Gov't Opp'n Ex. C,

7/7/08 Sentencing Transcript ("7/7/08 Sent. Tr."), at 18-19, 21.

## II.  STANDARD OF REVIEW

The court's review of Ayala-Villanueva's Motion is governed by 28

U.S.C. § 2255:

> A prisoner in custody under sentence of a court
> established by Act of Congress claiming the right to be
> released upon the ground that the sentence was imposed
> in violation of the Constitution or laws of the United
> States, or that the court was without jurisdiction to
> impose such sentence, or that the sentence was in excess
> of the maximum authorized by law, or is otherwise
> subject to collateral attack, may move the court which

imposed the sentence to vacate, set aside or correct the sentence.

A court should hold an evidentiary hearing on a § 2255 motion "unless the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. In the Ninth Circuit, this standard requires an evidentiary hearing where "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). "Thus, the district court's decision that [petitioner's] ineffective assistance claim did not warrant an evidentiary hearing [is] correct if his allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing *Schaflander*, 743 F.2d at 717) (quotation signals omitted).[3] Conclusory statements in a § 2255 motion are insufficient to require a hearing. *United States v. Johnson*, 988 F.2d 941, 945 (9th Cir. 1993).

After a careful review of the record, the court finds that it is appropriate to rule on the § 2255 Motion without an evidentiary hearing. As

---

[3] Although an evidentiary hearing is normally required when a petitioner's allegations are based on facts outside of the record, no hearing is required when the petitioner's credibility can be "conclusively decided on the basis of documentary testimony and evidence in the record." *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988); *see also Frazer v. United States*, 18 F.3d 778 (9th Cir. 1994).

explained below, Ayala-Villanueva has failed to make any specific factual allegations which, if true, would entitle him to relief.  Accordingly, an evidentiary hearing is not necessary.

### III.  ANALYSIS

Ayala-Villanueva claims that he is entitled to relief because (1) the government allegedly failed to disclose evidence favorable to him and failed to comply with Article 36 of the VCCR, and (2) his Criminal Justice Act Panel attorney, Kagiwada, provided ineffective assistance of counsel.  The court addresses each argument in turn.

### A.     The Government's Failure to Disclose Evidence

Ayala-Villanueva alleges that the government failed to disclose: (1) information regarding Gilberto Nunez' relationship to Bates; (2) investigative reports prepared by Federal Bureau of Investigation Special Agents Alexa Garcia and Gary Byrd from their June 21, 2007 interview of Bates; (3) impeachment information that the prosecution also had failed to disclose to co-defendant Nelson Gaitan-Ayala; and (4) his rights under Article 36 of the VCCR.

Ayala-Villanueva has waived his right to pursue any of these claims in his § 2255 Motion.  In his Plea Agreement, Ayala-Villanueva knowingly "waive[d] his right to challenge his sentence or the manner in which it was determined in any

collateral attack . . . [,]" Gov't Opp'n Ex. A, ¶ 12(a), other than a claim of

ineffective assistance of counsel or if the court imposed a sentence greater than that

specified in the advisory guideline range. *Id.* The Plea Agreement's § 2255

waiver is express and thus enforceable. *See United States v. Pruitt*, 32 F.3d 431,

433 (9th Cir. 1994). Because the court sentenced Ayala-Villanueva below the 210-

262 month advisory guideline range, and because these allegations focus on the

government's failure to disclose evidence and not ineffective assistance of counsel,

Ayala-Villanueva cannot raise these allegations in his § 2255 Motion. Ayala-

Villanueva is therefore foreclosed from raising claims of government misconduct.[4]

## B.    Ineffective Assistance of Counsel

Ayala-Villanueva makes a number of arguments in support of his

claim that Kagiwada provided ineffective assistance of counsel.[5] For the following

reasons, none of Ayala-Villanueva's arguments provides him relief.

---

[4] In any event, Ayala-Villanueva's claims that the prosecution failed to disclose impeachment evidence material to his defense are foreclosed by *United States v. Ruiz*, 536 U.S. 622, 633 (2002) ("[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."). Further, as discussed below, Ayala-Villanueva is not entitled to an individual remedy on his VCCR claim.

[5] On April 15, 2009, the court entered an Order finding that Ayala-Villanueva had waived his attorney-client privilege with Kagiwada as to the claims raised in his § 2255 Motion.

### 1.      *Legal Framework*

The Sixth Amendment guarantees the right to effective assistance of counsel at all critical stages of a criminal proceeding, including sentencing. *United States v. Gonzalez*, 113 F.3d 1026, 1029 (9th Cir. 1997). A petitioner demonstrates ineffective assistance of counsel by showing that: (1) his counsel's performance was objectively deficient, and (2) the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Counsel "is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91.

Even upon showing that counsel's performance is deficient, the petitioner must also show that the deficiency was prejudicial to the petitioner's defense. *Id.* at 692. Stated differently, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

8

### 2. *Kagiwada Was Not Objectively Deficient in Representing Ayala-Villanueva*

Ayala-Villanueva claims Kagiwada was ineffective because Kagiwada failed to: (1) inform Ayala-Villanueva of the government's failure to advise him of his rights under Article 36 of the VCCR; (2) examine the status of Ayala-Villanueva's ongoing civil case and ensure that all parties were apprised of all relevant information; (3) challenge the government's intent to obtain a sentence enhancement by filing a 21 U.S.C. § 851 Information; (4) explain to Ayala-Villanueva his option to plea without a plea agreement; (5) postpone sentencing after the government referred to Ayala-Villanueva as a "leader"; (6) object to the government's alleged failure to appoint standby counsel; (7) object to the government's alleged violations of Federal Rule of Criminal Procedure 5; and    (8) raise various sentencing issues.  Ayala-Villanueva has failed to show that Kagiwada's performance was objectively deficient, or, even if her performance was objectively deficient, that he was prejudiced.  The court addresses each argument in turn.

### a. *Article 36 of the VCCR*

Ayala-Villanueva argues that Kagiwada was ineffective by failing to advise him of the government's failure to comply with Article 36 of the VCCR.

Pet'r Mot. at unnumbered page 3.[6]  Ayala-Villanueva further contends that "had counsel told petitioner he would have contacted his consul" in order to "find a different attorney to find out what resources or how his consulate would help petitioner." *Id.*

The VCCR is "an international treaty that governs relations between individual nations and foreign consular officials." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 366 (2006); VCCR, Apr. 24, 1963, 596 U.N.T.S. 261.  Article 36 of the VCCR "governs relations between a consulate and its nationals, particularly those who have been arrested by the host country." *Sanchez-Llamas*, 548 U.S. at 367. Article 36 provides that when a foreign national is arrested, the "authorities of the receiving State shall, without delay, inform the consular post of the sending State" and facilitate communication between the prisoner and consular officials.  VCCR, art. 36(1)(c).  In addition, the authorities of the receiving state are charged with informing the foreign national of his rights under the VCCR "without delay." *Id.*

In order for a treaty to be judicially enforced, it "must both confer individual rights and be self-executing." *Cornejo v. County of S.D.*, 504 F.3d 853, 856 (9th Cir. 2007).  Although the VCCR is self-executing, the

---

[6] For clarity, the court assigns page numbers to Ayala-Villanueva's unnumbered brief starting with "unnumbered page 1" on the page immediately following the caption page.

Ninth Circuit has held that it does not create judicially enforceable rights.  *Id*. at

855-56.  Thus, "the only remedies for a violation of the VCCR are diplomatic,

political, or derived from international law."  *United States v. Longo*, 280

Fed.App'x. 914, 915 (9th Cir. 2008); s*ee also Breard v. Greene*, 523 U.S. 371, 378

(1998) (noting that any rights created under the VCCR exist "for the benefit of [the

state], not for [the] individual").

 The government admits that it failed to satisfy its VCCR obligations,

Gov't Opp'n at 10, and Kagiwada did not advise Ayala-Villanueva of the

government's requirement to inform him of his VCCR rights.  Gov't Ex. B,

Kagiwada Decl. ¶ 5.  The collective failure to inform Ayala-Villanueva of his

Article 36 rights notwithstanding, the court rejects Ayala-Villanueva's VCCR

argument on two grounds.

 First, to the extent Ayala-Villanueva has no judicially enforceable

rights under the VCCR, Kagiwada's failure to inform him or the court of the

government's failure to provide him with notification could not have resulted in

any judicially-sanctioned relief.  Without the possibility of any intervention by the

court, Kagiwada's failure to notify Ayala-Villanueva of his VCCR rights was not

ineffective.

 Second, Ayala-Villanueva's claim that had Kagiwada provided him

11

with appropriate VCCR notification, he may have found "a different attorney to find out what resources or how his consulate would him [him]," Pet'r Mot. at unnumbered page 3, fares no better.  To prove prejudice, Ayala-Villanueva "must explain the nature of the assistance he might have received had he been alerted to his Article 36 rights."  *Osagiede v. United States*, 543 F.3d 399, 413  (7th Cir. 2008).  But Ayala-Villanueva has advanced not even a suggestion that the El Salvadorian consulate could have offered any assistance that Kagiwada could not. Instead, he offers an insufficient generalized claim of what the El Salvadorian consulate might have done had it been contacted.  Such conclusory, generalized statements are insufficient to prove prejudice.  *See Murphy v. Netherland*, 116 F.3d 97, 101 (4th Cir. 1997) ("Murphy offers no evidence that the Mexican consulate could have offered any assistance that his attorney did not."); *Breard v. Greene*, 523 U.S. 371, 377 (1998) (holding that the claim that petitioner would have accepted the State's plea offer had the VCCR been followed was too speculative); *Ortega-Correra v. United States*, 2007 WL 2274429, at *10 (M.D. Fla. Aug. 6, 2007) (noting *Strickland* prejudice prong not met absent a showing that "there was a reasonable probability that, but for defense counsel's actions in failing to protest the Government's allowing [petitioner] only one attempt to reach the Columbian

consulate, the result of his criminal proceeding would have been different.").[7]

Thus, even if Kagiwada's performance was objectively deficient, Ayala-Villanueva

has failed to show that her performance prejudiced his defense.

        b.     *Ayala-Villanueva's civil case*

        Ayala-Villanueva states that he asked Kagiwada to "look into his civil

[immigration] case and this indictment," Pet'r Mot. at unnumbered page 3, and to

"talk to his Civil [sic] attorney to make sure that he was not deprive [sic] of any

rights." *Id.*

        In fact, Kagiwada spoke with Ayala-Villanueva's immigration

attorney, Leon Rosen ("Rosen"), on numerous occasions.  Kagiwada Decl. ¶ 6.

Kagiwada kept Rosen apprised of the status of Ayala-Villanueva's criminal case,

and Rosen kept Kagiwada informed of the status of his civil case.  *Id.*  Based on

these facts, Kagiwada fulfilled her duty to "make reasonable investigations or to

make a reasonable decision that makes particular investigations unnecessary."  *See*

*Strickland*, 466 U.S. at 691.

        Even if Kagiwada failed to contact Rosen, Ayala-Villanueva fails to

allege any prejudice to his criminal case.  *See* Pet'r Mot. at unnumbered page 3.

---

[7] Further, as the Supreme Court has explained, an American attorney is "likely far better able to explain the United States legal system . . . than any consular official would have been." *Breard v. Greene,* 523 U.S. 371, 377 (1998).

The absence of any evidence of prejudice is likewise fatal to this claim.

      *c.*     *The § 851 Information*

Ayala-Villanueva claims that Kagiwada did not effectively address the prosecution's intent to file a § 851 Information to enhance Ayala-Villanueva's sentence based on his prior May 20, 2004 California drug conviction. Pet'r Mot. at unnumbered page 3. According to Ayala-Villanueva, his 2004 conviction is not a "felony drug offense" as defined by 21 U.S.C. § 802(44) because he received a sentence of less than one year of imprisonment. *Id*. This argument fails.

The United States, in fact, never filed a § 851 Information. According to Assistant United States Attorney Susan Cushman ("AUSA Cushman"), she elected not to file a § 851 Information "because of some of the points that Ms. Kagiwada made . . . because of her advocacy." 07/07/08 Sent. Tr. at 12. Because Kagiwada effectively addressed the § 851 Information issue with AUSA Cushman, and Ayala-Villanueva benefitted from her representation, Kagiwada's representation as to the § 851 Information was not deficient.[8]

---

[8] In any event, Ayala-Villanueva misreads 21 U.S.C. § 802(44). The relevant time frame is not the length of the sentence imposed, but whether the offense is "punishable by imprisonment for more than one year." *See* 21 U.S.C. § 802(44). Ayala-Villanueva was convicted of "Transportation of a Controlled Substance," PSR ¶ 34, which carries a maximum penalty of three, four, or five years imprisonment. *See* Cal. Health & Safety Code § 11352. In short, the government could have properly filed a § 851 Information based on Ayala-Villanueva's 2004 conviction.

     *d.*     *Option to plea without a plea agreement*

Ayala-Villanueva next claims that Kagiwada failed to explain that he had the option to enter a plea of guilty to all charges without a plea agreement. Pet'r Mot. at unnumbered page 3.  He explains that Kagiwada wrote him a February 11, 2008 letter stating that the government offered him two options:    (1) enter a plea of guilty pursuant to a plea agreement and forgo the filing of the   § 851 Information; or (2) reject the plea of guilty pursuant to a plea agreement and the government would file the § 851 Information.  *Id.*  Ayala-Villanueva concludes that had he been aware of an option to enter a plea of guilty without a plea agreement, he would have taken this option in order to pursue "vindication of the violations to his constitutional rights, including direct appeal and post-conviction relief." Pet'r Reply at 3.   Even if Kagiwada neglected to inform Ayala-Villanueva that he had a right to enter a plea of guilty without a plea agreement, her performance was not objectively deficient under the unique facts of this case.

     Kagiwada and Ayala-Villanueva were faced with two choices: (1) enter a plea of guilty without the filing of a § 851 Information and face a ten-year mandatory minimum; or (2) refuse the Plea Agreement, resulting in the filing

of the § 851 Information and a twenty-year mandatory minimum.[9]  Kagiwada and

Ayala-Villanueva chose the first option, relieving Ayala-Villanueva of the

mandatory twenty-year sentence.[10]  As a result of this choice, with an offense level

33 and criminal history category V, Ayala-Villanueva's advisory guideline range

was 210-262 months.  But because the court was bound by only a ten-year

mandatory minimum, PSR ¶ 55, it was free to sentence well below this advisory

guideline range.  In fact, the court sentenced Ayala-Villanueva to 14 years of

imprisonment, a full 6 years below the mandatory term that he would have faced

had he rejected the Plea Agreement.  Under these facts, Kagiwada's performance

was not objectively deficient.[11]

Ayala-Villanueva also fails to demonstrate prejudice.  He claims

simply that had he pled guilty without a plea agreement, he could have vindicated

violations of his constitutional rights, including a direct appeal and by way of a

---

[9] Ayala-Villanueva does not claim that had he been informed of his right to enter a plea without a plea agreement that he would have proceeded to trial.  Instead, he simply claims that he would have entered a plea to all counts without a plea agreement.

[10] Had Ayala-Villanueva entered a straight plea with the filing of a § 851 Information, he would have been sentenced to a minimum of twenty years because the government did not file a departure motion pursuant to 18 U.S.C. § 3553(e) and Ayala-Villanueva, with a criminal history category V, did not qualify for the safety valve.  PSR ¶ 38.

[11] Further, Ayala-Villanueva's claim of innocence as to count 2 of the Indictment would have precluded any effort to enter a plea to all counts without a plea agreement.  Kagiwada Decl. ¶ 9.

post-conviction petition.  He fails to allege, however, what constitutional rights were violated or how he could have vindicated constituional rights on a direct appeal after entering a plea of guilty without a plea agreement.  By entering a plea of guilty without a plea agreement, a defendant waives constitutional defects.  *See United State v. Lopez-Armenta*, 400 F.3d 1173, 1175 (9th Cir. 2005) ("[I]t is well settled that an unconditional guilty plea constitutes a waiver of the right to appeal all nonjurisdictional antecedent rulings and current antecedent constitutional defects.").  Further, in his § 2255 Motion Ayala-Villanueva did raise various claims that the government failed to disclose impeachment evidence, all of which would have been foreclosed by *United States v. Ruiz*, 536 U.S. 622, 633 (2002), had he entered a plea without a plea agreement.[12]

            *e.*    *Failure to postpone sentencing*

Ayala-Villanueva argues that Kagiwada was ineffective by failing to postpone sentencing when AUSA Cushman referred to Ayala-Villanueva as a "leader" during the sentencing hearing.  Pet'r Mot. at unnumbered page 3.  Ayala-Villanueva contends that "[i]f petitioner had been given the chance to make

---

[12] Lastly, it appears that Ayala-Villanueva could not have entered a straight-up plea based on his present admission that "I told my counsel that I was not guilty as to count 2 of the indictment."  Pet'r Reply, Ayala-Villanueva Decl. at 12.  Further, that he now claims that he is not guilty to count 3 as well as count 2 is undermined by his admission of guilt in the Memorandum of Plea Agreement and his plea of guilty.

objections to the new information . . . petitioner would have presented documentary and testimonial evidence that he was not a leader." *Id.* Ayala-Villanueva further argues that, even though he did not receive an aggravating role adjustment at sentencing, AUSA Cushman's statement affected his sentence. *Id.* Ayala-Villanueva's arguments are without merit.

Contrary to Ayala-Villanueva's assertions, no new information was introduced at his sentencing hearing. Although AUSA Cushman did refer to Ayala-Villanueva as "sort of a leader," this comment merely contextualized the evidence adduced against Ayala-Villanueva in the PSR. Specifically, AUSA Cushman stated:

> He was the one who arranged to have the drugs brought
> over to Molokai for the initial sale that resulted in the
> arrest of Roxanne Bates and Raychel Cabral and himself.
> And he actually brought the drugs to Raychel Cabral's
> house and then she transported them to Molokai. A
> search warrant was executed at his house a couple of
> days later after he was picked up in Molokai. A very
> large amount of methamphetamine was recovered there
> consistent with distribution as was a large amount of
> cash. So he was sort of the leader of - - it's the
> government's theory that he was sort of the leader of this
> group until he got picked up . . . .

7/7/2008 Sent. Tr. at 13. This statement is wholly consistent with the facts set forth in the PSR as adopted by the court -- that is, Ayala-Villanueva provided Cabral with one ounce of methamphetamine on March 1, 2005, and Cabral then

18

transported these drugs to Molokai to provide them to Bates.  PSR ¶¶ 9-10.  Thus,

AUSA Cushman's reference to Ayala-Villanueva as "sort of the leader" simply

described the extent of his involvement in the underlying offense as described in

the PSR.  Significantly, AUSA Cushman did not seek an aggravating role

adjustment under the guidelines, and no such leadership role was found to exist.

Given these facts, Kagiwada's strategic choice not to request that

sentencing be postponed is strongly presumed to be within the bounds of

reasonable professional judgment.

### f.    *Failure to appoint standby counsel*

Ayala-Villanueva next argues that Kagiwada was ineffective for

failing to "make objections to the government's failure to appoint standby counsel

to handle defense on the motion by the government order continuing trial date and

excluding time under the speedy trial act [sic]. . . ." and that he "did not know that

a jury trial was scheduled for August 7, 2008."  Pet'r Mot. at unnumbered page 4.

Although not clear, Ayala-Villanueva appears to claim that Kagiwada should have

argued that the court's failure to appoint him counsel prior to his arraignment

resulted in a violation of the Speedy Trial Act.[13]  This claim also fails as a matter of

---

[13] To the extent Ayala-Villanueva claims that he was improperly denied "standby counsel" pursuant to *Faretta v. California*, 422 U.S. 806 (1975), this claim is without any support.  Because Ayala-Villanueva never waived his right to counsel, there was simply no

(continued...)

law.

Although the original indictment charging Ayala-Villanueva was returned by the grand jury on May 31, 2007, Ayala-Villanueva was not arraigned until August 24, 2007.  Prior to his arraignment in the District of Hawaii, Ayala-Villanueva was in the custody of the Bureau of Immigration and Customs Enforcement ("ICE") on an immigration detainer.[14]

On June 18, 2007, the government filed a motion to continue the trial date and to declare the case complex pursuant to 18 U.S.C. § 3161(h)(7)(B)(ii).  Doc. No. 35.  Magistrate Judge Leslie E. Kobayashi granted that motion on June 22, 2007, continuing the trial date from August 7, 2007 until November 6, 2007.  Doc. Nos. 54, 72.  Ayala-Villanueva now appears to claim that Kagiwada provided ineffective assistance of counsel by failing to raise a violation of his Speedy Trial Act rights resulting from the court's order continuing the August 7, 2007 trial date.

---

[13](...continued)
reason to appoint standby counsel.

[14] According to the government, Ayala-Villanueva was in Arizona in the custody of ICE from April 15, 2005 until August 19, 2007.  Ayala-Villanueva admits that he was in ICE's custody charging him "with removel [sic]."  Pet'r Mot. at unnumbered page 6.  Kagiwada states that after she was appointed to represent Ayala-Villanueva on August 22, 2007, she learned that he had been in ICE custody on an immigration detainer.  Kagiwada Decl. ¶¶ 3-4.  She explains that after Ayala-Villanueva was arrested in connection with his instant offense on March 2, 2005, he was transferred to ICE custody, and then to the State of Nevada where he served time for a parole violation.  *Id*. ¶ 4; *see also* PSR ¶ 32.  He was then again transferred to ICE custody, where he remained from April 15, 2005 until his transfer to the District of Hawaii on August 19, 2007 based on the government's writ of habeas corpus ad prosequendum.  *Id*.

Any such motion by Kagiwada, however, was doomed to failure.  The Speedy Trial Act's seventy-day trial clock begins to run "from the filing date (and making public) of the . . . indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, *whichever date last occurs.*"  18 U.S.C. § 3161(c)(1) (emphasis added).  The seventy-day clock thus did not begin to run until August 24, 2007, the date that Ayala-Villanueva first appeared in the District of Hawaii.  Any objection relating to events occurring after the charges were initially filed and Ayala-Villanueva's first appearance in court would have been futile.  As a result, Kagiwada was not deficient in her performance and Ayala-Villanueva was not prejudiced in any manner.

g.    *Rule 5*

Ayala-Villanueva next argues that the government violated Federal Rule of Criminal Procedure 5 on two occasions: (1) when he was arrested on March 2, 2005 and held in custody from March 3, 2005 through March 9, 2005 without being brought before a magistrate judge; and (2) during the period he was transferred from custody in Nevada to custody in Hawaii in August, 2007.  Pet'r Mot. at unnumbered page 4.

Federal Rule of Criminal Procedure 5 provides that an arresting

21

officer "must take the defendant without unnecessary delay before a magistrate judge." Fed. R. Crim. P. 5(a)(1).  The duty to take a defendant before a federal magistrate, however, is not subject to mechanical application.  *See Conrad v. United States*, 447 F.3d 760, 766 (9th Cir. 2006) ("Because the rule does not define the term 'unnecessary,' an agent must determine, from all the circumstances existing at the time, how much delay is necessary before presenting a defendant to the magistrate judge."); *Williams v. United States*, 273 F.2d 781, 798 (9th Cir. 1960) (rejecting the idea that a hard and fast time frame can be generated to satisfy Rule 5(a) requirements).  Rather, a Rule 5(a) claim hinges on "the nature of police activities during this period." *Smith v. United States*, 390 F.2d 401, 403 (9th Cir. 1968).  A cognizable Rule 5(a) claim would need to establish, for example, that the primary purpose of the delay was to allow federal officers to interrogate the defendant. *Id.* (citing *Cote v. United States*, 357 F.2d 789, 793-94 (9th Cir. 1966)). Accordingly, the proper remedy for a Rule 5(a) violation is to "render[] inadmissable any incriminating evidence obtained during the unnecessary delay." *United States v. Means*, 252 Fed.App'x. 830, 834 (9th Cir. 2007) (citing *United States v. Studley*, 783 F.2d 934, 937 n.2 (9th Cir. 1986)); *see also United States v. Mangual-Santiago*, 562 F.3d 411 (1st Cir. 2009); *United States v. Guthrie*, 2007 WL 1176194 (E.D. Cal. Apr. 20, 2007); *United States v. Cardenas*, 410 F.3d 287

(5th Cir. 2005).

Because Ayala-Villanueva has not offered any evidence indicating that he was prejudiced -- through interrogation or otherwise -- during the periods he claims Rule 5(a) was violated, any motion filed by Kagiwada was sure to fail. Thus, even if Rule 5(a) was violated, Kagiwada was not remiss in her decision not to pursue a Rule 5(a) claim.

### h.    *Various sentencing issues*

Ayala-Villanueva also claims that Kagiwada was ineffective at sentencing for failing: (1) to point out the sentencing disparity between himself and Bates; and (2) to seek credit for the time served in ICE custody prior to August 19, 2007.  Pet'r Mot. at unnumbered page 5.  Both claims lack factual support.

At sentencing, the court is required to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).  Ayala-Villanueva contends that because Bates was similarly situated to him (or more culpable than he was), and because she received a sentence of 90 months while he received a sentence of 168 months, Kagiwada was deficient in failing to raise this disparity

with the court.[15]

In fact, in her July 2, 2008 sentencing statement, Kagiwada argued that the court should take into consideration the sentences of others involved in Ayala-Villanueva's criminal activity, including Bates' 90-month sentence. 7/2/2008 Supp. Sent. Statement at 11-12. Further, during the sentencing hearing Kagiwada stated that "Mr. Ayala-Villanueva's recommended guideline range is far higher than any of the other defendants who have been sentenced in this case so far." 7/7/2008 Sent. Tr. at 8.

Moreover, Bates' sentence was not easily comparable to Ayala-Villanueva's. Ayala-Villanueva's base offense level was four levels higher, based on the seizure of 1,115 grams of ice seized from his residence on March 4, 2005. Further, Ayala-Villanueva had a criminal history category V, while Bates had a criminal history category II. Additionally, Bates cooperated with the government and received a substantial assistance motion under guideline § 5K1.1 and 18 U.S.C. § 3553(e), while Ayala-Villanueva did not. Finally, at sentencing the court considered the § 3553(a)(5) factors, having reviewed the co-defendants "that were sentenced before me in this case and their sentences, their criminal history

---

[15] The court is liberally construing Ayala-Villanueva's claim as one implicating ineffective assistance of counsel. To the extent that Ayala-Villanueva is not claiming ineffective assistance of counsel, but instead arguing that the court erred in not considering sentencing disparity, he waived his right to bring such a claim in his § 2255 Motion.

categories and offense levels and their conduct in general.  Many received motions

for downward departure."  7/7/2008 Sent. Tr. at 17-18.  This evidence

demonstrates that Kagiwada was not deficient in her performance, and in any event

the court did consider § 3553(a)(5) in relation to Bates' sentence.  *Id.*

        Ayala-Villanueva's claim that Kagiwada failed to argue that he should

have received credit for the time served in ICE custody is belied by the record.

Kagiwada discussed the immigration detention at length in her supplemental

sentencing statement, requesting that the "court impose a sentence below the

advisory guidelines range based on his uncredited ICE detention."  7/2/2008 Supp.

Sent. Statement at 6.  She made the same argument at sentencing, and in fact the

court did reduce the sentence it otherwise would have imposed in order for Ayala-

Villanueva to receive credit for the time spent in ICE custody.  7/7/2008 Sent. Tr.

at 18, 29.  In short, Kagiwada did in fact argue for a reduced sentence based on

Ayala-Villanueva's prior custody, and the court accepted her argument.  As a

result, Ayala-Villanueva is entitled to no relief.

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the court DENIES Ayala-Villanueva's

Motion to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 23, 2009.



<u>/s/ J. Michael Seabright</u>
J. Michael Seabright
United States District Judge

*Ayala-Villanueva v. United States*, Civ. No. 09-00137 JMS/LEK, Cr. No. 07-00268 JMS-04,
Order Denying Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255